## St. Paul & Duluth Railroad Co. vs. City of Duluth.

Argued Jan. 25, 1894. Reversed Feb. 10, 1894.

No. 8533.

**Liability of a city for surface water and perennial streams.**

McClure v. City of Red Wing, 28 Minn. 194, followed on the point that a municipal corporation is not liable to the owner of private premises within its boundaries for failing to provide a system of sewerage to carry away from such premises surface water and the water of perennial streams naturally coming thereon.

**Facilitating the flow by sewers.**

The owner of a swamp which is the natural place of deposit of the surface waters and perennial streams from the higher adjoining territory cannot complain because such municipal corporation continues to deposit such waters on such swamp by means of mere storm sewers after such swamp has been improved.

Diverting such waters from their natural channel.

This rule is not changed by the fact that the municipal corporation has diverted such waters from natural ravines, and, through such sewers, deposited them on such swamp at different points from those at which the ravines terminate, the owner of the swamp having adopted the change made by such diversion in building the roadbed of a railroad across the swamp, by leaving no openings in the raised surface of such roadbed opposite the ends of the ravines, and by putting in box culverts across such roadbed opposite the ends of some of the sewers, to carry off such waters.

Appeal by defendant, the City of Duluth, from an order of the District Court of St. Louis County, *J. D. Ensign,* J., made September 23, 1893, denying its motion for a new trial.

Action brought by the St. Paul & Duluth Railroad Company to require the city to construct and continue its storm sewers underneath its railroad tracks to the Bay of Duluth and to restrain the City from so constructing new storm sewers as to empty their waters against its embankment built for its tracks along the shore of the bay. The facts are stated in the opinion. The issues were referred to J. L. Washburn, Esq., to take the evidence and report the facts and his conclusions of law thereon. He heard evidence and reported the facts and his conclusion that the city should construct and continue its sewers to the Bay of Duluth and should not discharge the waters collected therein against the embankment of the plaintiff. The city moved for a new trial. Being denied it appeals.

*H. F. Greene,* City Attorney, for appellant.

No one of the numerous decisions in Minnesota upon this class of cases ever went in favor of the party complaining of the intrusion of water, unless two facts were shown, First, that more water came upon his property than before the trespass or intrusion complained of, and second that there was a consequent injury which before the trespass or intrusion was not suffered. *O'Brien* v. *City of St. Paul,* 18 Minn. 176; *Kobs* v. *City of Minneapolis,* 22 Minn. 159; *O'Brien* v. *City of St. Paul,* 25 Minn. 331; *Hogenson* v. *St. Paul, M. & M. Ry. Co.,* 31 Minn. 224; *Township of Blakely* v. *Devine,* 36 Minn. 53; *Pye* v. *Mankato,* 36 Minn. 373; *Follman* v. *City of Mankato,* 45 Minn. 457.

This case is unique and is distinguished from every case decided in this state on the subject, in that in those cases it appears that the defendant cast the water on plaintiff's land, and that this act of defendant was manifestly the proximate cause of plaintiff's injury. It is not so in the case at bar.

This case also stands by itself, in that the injury complained of is entirely the result of the acts of the complaining party. The track of the St. Paul and Duluth Railroad Company was originally built on piles which allowed free egress for the discharge of these sewers. This has been changed to a solid dyke. No egress has been left for the waters of the city. This change has been made by the plaintiff. In making this change no egress is left even for the seven perennial streams which, as the referee finds, flowed into this marsh. The right of a municipality to do the acts here complained of are stated and illustrated in the following authorities. *McClure* v. *City of Red Wing*, 28 Minn. 186; *Martin* v. *Riddle*, 26 Pa. St. 415; *Kauffman* v. *Griesemer*, 26 Pa. St. 407; *Miller* v. *Laubach*, 47 Pa. St. 154; *Meixell* v. *Morgan*, 149 Pa. St. 415; *Dayton* v. *Drainage Com'rs*, 128 Ill. 271; *Lambert* v. *Alcorn*, 144 Ill. 313; *Johnson* v. *Chicago, St. P. M. & O. Ry. Co.*, 80 Wis. 641; *Jenkins* v. *Wilmington & W. R. Co.*, 110 N. C. 438; *Jordan* v. *St. Paul, M. & M. Ry. Co.*, 42 Minn. 172; *Collins* v. *City of Waltham*, 151 Mass. 196; *Turner* v. *Dartmouth*, 13 Allen 291; *Emery* v. *Lowell*, 104 Mass. 13; *Kennison* v. *Beverly*, 146 Mass. 467; *Parks* v. *City of Newburyport*, 10 Gray, 28.

*Bunn & Hadley* and *J. D. Armstrong*, for respondent.

These storm sewer pipes are partly of iron and partly of brick, or concrete. They vary in diameter from twenty four inches to six or eight feet. The longer of the sewers are about half a mile in length and have an elevation at the upper end of 350 feet above the lake. So that the city gathers these waters together as quickly as possible and discharges them in solid bodies through smooth pipes in large volumes with great velocity against the road bed of the plaintiff. While the aggregate volume of water draining from the land may not be increased, it is gathered together and concentrated and thrown down at fourteen points, while naturally

it came down at almost an infinite number of points.   This makes it plain that its destructive operation on the plaintiff's property is immensely increased by the storm sewage system of the city. The minimum territory is about twenty two acres and the maximum about sixty six acres draining into each sewer.   The land is largely of a rocky character and impervious to water.   After a storm the water is gathered and discharged by each sewer pipe in one solid mass against the embankment of the railroad company.   These figures show better than argument how destructive the action of these waters must be and how clear it is that both the volume and velocity of the water reaching the railway property has been enormously increased and concentrated at particular points by these sewers.

It is obvious that somebody must carry the sewers to the lake. If the railroad company continues them simply through its own property they would then discharge against the property of the Chicago, St. P. M. & O. railway company and the improved property of other persons and corporations who would in their turn have the same cause of complaint against the plaintiff that it now has against the city.   The result is, that if the city is right in its contention it is the obligation of every land owner between the St. Paul & Duluth tracks and the established dock line to pay for the extension of these sewers through his property.   Successive private land owners will own and control successive sections of the sewers.   They can never be brought under one ownership, control and management unless the city extends them to the lake, condemning if necessary the required right of way.

This case is controlled, we think, by a rule well settled in the law of this state which may be thus stated:   One land owner cannot for the sole purpose of draining his own lands accumulate and gather the surface water coming thereon and discharge the same onto his neighbor's lands in large bodies or streams so as to do substantial injury.

Having mingled the stream and surface water and put the whole into artificial channels, into iron and concrete pipes, the burden was on the city to show that this water was the water of natural streams and that their works had not increased its destructive operation on plaintiff's property.   This the city utterly failed to

show, and it is probably true that even such a showing would not be a defense. *Fletcher* v. *Smith*, 2 App. Cas. 781. The plaintiff's property though originally low and marshy was as much the subject of ownership and improvement as any other land. Plaintiff had a right to improve it for railroad purposes, to raise and fill it up, to turn off the surface water from it. *Brown* v. *Winona & S. W. Ry. Co.*, 53 Minn. 259. The city's rights are well settled to be the same as those of an upper land owner. *O'Brien* v. *City of St. Paul*, 25 Minn. 331.

The construction of ditches and pipes for the sole purpose of drainage, gathering water in streams or bodies solely to discharge it, and thus dumping it onto another's land, is actionable. Such works are not a reasonable and proper improvement of one's own premises. *Hogenson* v. *St. Paul, M. & M. Ry. Co.*, 31 Minn. 224; *Township of Blakely* v. *Devine*, 36 Minn. 53. This is the precise test laid down in the case of *Brown* v. *Winona & S. W. Ry. Co.*, 53 Minn. 259, where all the authorities were so lately and carefully reviewed, as to leave little to be said.

*Beach* v. *Gaylord*, 43 Minn. 476, holds that one has no right to gather the rainfall from his roof and discharge it in a stream against his neighbor's land. And if one has no right to drain his roof in that way he has no right to drain his grounds in that way.

CANTY, J. The part of the city of Duluth here in question is a steep hillside, sloping towards St. Louis bay. This slope rises 600 feet above the bay, and extends back from it more than a mile. In 1870, between the foot of the hill and the bay, there was a wide margin of marsh or swamp, covered, more or less, with the water of the bay. Between what is now Fourth Avenue East and Twelfth Avenue West, there were on this slope seventeen large ravines, which were well-defined water channels, in which water ran down the hill into the swamp below, and there spread out over the swamp, and flowed off into the bay. In seven of these ran perennial streams of water, and in the other ten large volumes of water ran during times of storms, freshets and melting snows. There were many other smaller depressions and ravines, which carried more or less surface water at such times into the swamp.

In 1870 the predecessor in interest of the plaintiff constructed its

track along on this swamp, parallel to the foot of the hill and the side of the bay, upon piling driven into the swamp. This piling offered no resistance to the free egress of the water. From time to time since, the plaintiff has added other tracks built on piles, and has filled up the right of way under the tracks with embankments of earth, leaving no place or passage for the egress of the water, except one near Tenth Avenue West, which is sixteen to eighteen feet wide, and is still crossed by the track, supported on piling. At seven or eight other points, plaintiff has put in temporary box culverts of wood across the right of way, not opposite the ravines and natural water channels, but opposite the ends of the storm sewers hereinafter mentioned. The part of the city built on this slope was platted before the railroad was built, with streets running along the side the slope, parallel with the railroad right of way, and other cross streets running up and down the side of the hill, terminating at the right of way. These streets have since been improved, and now exist as so platted.

The city has also constructed under these cross streets fourteen sewers, which run down the hill, and all of them terminate at plaintiff's right of way, except two, one at Lake Avenue, and one at Fifth Avenue west, which have been extended under the right of way to the bay. Some of the others connect with the box culverts above mentioned, some have no connection, and one or two empty into said bridged open space left across the right of way. These sewers carry off the surface water deposited by rains and snows and the water of the seven perennial streams, all the water having been diverted from the said seventeen ravines into these storm sewers. They are connected only with the catch basins in the streets, not with the houses. There is another system of sanitary sewers running at right angles to these storm sewers, and having no connection with them.

The plaintiff brings this action against the city to enjoin the use by it of these sewers, and the depositing of the water from them on plaintiff's right of way. It is not claimed that these sewers bring any more water onto plaintiff's premises than was brought by the ravines and creeks in a state of nature; but it is claimed that the water has been diverted from the creeks and ravines, and deposited at other points on the premises; that it runs down these sewers

with great velocity, and strikes the roadbed with great force, tearing it up.

The plaintiff further claims that "it is well settled that the construction of ditches and pipes for the sole purpose of drainage, gathering water in streams or bodies solely to discharge it, and thus dumping it onto another's land, is actionable.    Such works are not a reasonable and proper improvement of one's own premises."

The cases cited by counsel are cases where surface water was collected and discharged onto premises where it would not naturally go.    The city of Duluth would have no right to discharge surface water on the land of any private owner, unless his land is the natural channel or dumping ground for it.    But the land of plaintiff is such natural dumping ground.    Plaintiff complains that the city is making such of it, but it seems to forget that nature, and not the city, has made this place such dumping ground, and that the city has never relieved the land of such servitude.    It complains that the city diverted the water from its natural channels into these sewers, which deposit the water at different points on its premises from those at which the ravines deposited it; but it forgets that these premises are, so to speak, all channel, and that, while the city diverted the water from its natural channels upon the slope of the hill, it returned the water to that channel,—the common dumping ground,— at plaintiff's premises.    If plaintiff had improved its right of way with special reference to the ends of the ravines, and left openings opposite such ends for the water coming down the ravines, then the plaintiff might be in a position to object to a diversion afterwards of the water to the points where the sewers terminate.    But it has not done so.    It has permitted the city to make these changes, and has to a considerable extent adopted the plan of the city, by closing up all openings for egress of water at the ends of the ravines, and putting in the box culverts opposite the ends of the sewers. Estoppel by conduct, if any exists, is against the plaintiff, not against the city.

The defendant is not liable for failing to relieve plaintiff of the burdens put on plaintiff's premises by nature, or for failing to provide a sewer system for plaintiff's premises.    "The duty of providing drainage or sewerage is in its nature judicial or legislative, and consequently a municipal corporation is not liable for mere nonaction

in failing to perform it." *McClure* v. *City of Red Wing*, 28 Minn. 194, (9 N. W. 767.)

It is true that the water comes down against plaintiff's right of way with considerable velocity, but that is a velocity given it by the hillside, which was made by nature, and not by the city.

It seems to us that the case is simply this: Can the owner of a swamp improve it, and then compel the owner of the high land around it to keep the surface water naturally tributary to the swamp from coming from the higher lands upon the swamp? We think not.

For these reasons the order denying the motion for a new trial should be reversed. So ordered.

(Opinion published 58 N. W. Rep. 159.)