ORESTES L. DUDLEY v. VILLAGE OF BUFFALO.

July 15, 1898.

Nos. 11,090—(202).

**Village—Inadequate Drains—Surface Water.**

A village is not liable for the overflow of private property resulting from the inadequacy of its drains constructed for the purpose of carrying off the surface water from its streets, where such property was the natural depository of all of the water discharged thereon.

**Same—Evidence.**

*Held*, that the evidence herein does not show that the defendant, by its drains or otherwise, unnecessarily discharged surface water upon the plaintiff's land, where it did not naturally belong.

Action in the district court for Wright county to recover $1,200 for flooding plaintiff's land. The cause was tried before Tarbox, J., and a jury. At the conclusion of plaintiff's evidence, the court

dismissed the case on the ground that he had failed to prove his case. From an order denying his motion for a new trial, plaintiff appealed. Affirmed.

*W. H. Cutting*, for appellant.

That making one's premises a place of deposit for the surplus waters in the sewer in times of high water, or creating a nuisance upon them so as to deprive the owner of the beneficial use of his property, is an appropriation requiring compensation to be made, see Weaver v. Mississippi & R. R. Boom Co., 28 Minn. 534: Tate v. City of St. Paul, 56 Minn. 527. Appellant relies upon the law as established in Tate v. City of St. Paul, supra; Pye v. City of Mankato, 36 Minn. 373; Kobs v. City of Minneapolis, 22 Minn. 159; Netzer v. Crookston, 59 Minn. 244; Follmann v. City of Mankato, 45 Minn. 457; Beach v. Gaylord, 43 Minn. 476; Township v. Devine, 36 Minn. 53; Robbins v. Village of Willmar, 71 Minn. 403.

*J. J. Woolley*, for respondent.

The village had a right to raise its streets and make them passable, and it was the duty of the lot owners to raise their lots to grade. Knostman v. City, 99 Iowa, 589; City v. Hansen, 104 Iowa, 189. If plaintiff's park was necessarily overflowed during heavy rains to his injury, it was the misfortune of his situation in occupying premises thus naturally low. Alden v. City of Minneapolis, 24 Minn. 254; Allen v. City, 52 Wis. 430. The village, in no event, would be required to provide against extraordinary storms. Mills v. City, 32 N. Y. 489; Allen v. City, supra. A city is not liable for wholly failing to provide drainage or sewerage, nor for a mere error of judgment as to the plan of drainage, nor for the insufficient size or capacity of drains or gutters for the purposes intended,—at least if the adjoining property is not in any worse condition than if no gutters or drains whatever had been constructed. Pye v. City of Mankato, 36 Minn. 373; Alden v. City of Minneapolis, supra; McClure v. City of Red Wing, 28 Minn. 186; Henderson v. City of Minneapolis, 32 Minn. 319. See also 2 Dillon, Mun. Corp. § 1046; St. Paul & D. R. Co. v. City of Duluth, 56 Minn. 494; Waters v. Village, 61 Wis. 642; Lee v. City of Minneapolis, 22 Minn. 13; 16 Am. & Eng. Enc. 392, 393.

START, C. J.

This is an action for the recovery of damages which the plaintiff claims he has sustained by the negligence of the defendant village, whereby his land was flooded with water and covered with mud and filth. At the close of his evidence the trial court dismissed the action, and he appeals from an order denying his motion for a new trial.

All of the assignments of error save the last one relate to the rulings of the trial court as to rejection and reception of evidence on the trial. It is unnecessary to refer to or discuss these assignments in detail, for all of them so far as they relate to the merits of this appeal are involved in a consideration of the plaintiff's last assignment of error, which is to the effect that the trial court erred in dismissing the case, because the evidence was sufficient to establish prima facie a liability on the part of the defendant for the wrongs complained of.

The evidence tended to show the following facts:

The plaintiff is, and had been for many years prior to the commencement of this action, the owner of a tract of land in the village of Buffalo, known as "Dudley's Park," which is approximately the north two-thirds of a block bounded north by Morgan, east by Ash, south by Ackley, and west by Butternut streets. Before any of these streets were improved, the park was a natural catch-basin, or depository for all of the surface water from the adjacent land to the north, east and west of it, which, after coming into the park, overflowed at the southeast corner thereof, and found its way into a low place on the east side of Ash street, near the center line of Ackley street if extended. Beginning at this low place, the village, prior to the year 1889, for the purpose of surface drainage only, put in a blind ditch which extended southerly 350 feet, thence in the form of an open gutter to a creek flowing to the lake. In 1889 it constructed from the head of this blind ditch a box drain, six by eight inches, west across Ash street, thence up the west side thereof to the southeast corner of the park; and thence, in 1895, a box drain, eight by eight inches, was constructed to the north side of Morgan street, where there was a hole or depression in the land.

The plaintiff constructed a drain along and through his park

near the center thereof, and connected it with the village drain. After Ash street was graded, the surface water which naturally flowed from the east into the park was shut off, and it thereafter flowed down on the east side of the street to the low place at the head of the blind ditch. These drains were not sewers, in the usual acceptation of the term, although in the complaint and in appellant's brief they are so designated. They are in fact drains constructed by a village of less than 1,000 inhabitants (if we take judicial notice of the census returns, as we may) as a part of its street improvements to carry off surface water. They answered this purpose except in cases of very heavy rainstorms. In such cases they were not of sufficient capacity to carry off all of the water, and were liable to become obstructed. The village had notice of this insufficiency of these drains, but not of any actual obstructions therein.

On June 26, 1897, the village put in a box drain commencing at the low place on the north side of Morgan street, at the head of the drain on the west side of Ash street, thence across Ash street to the east side thereof. This drain shut off the flow of water down the east side of Ash street, and carried it across to the mouth of the drain on the west side.

On the next day after this drain was completed, there was an unusually heavy fall of rain, and the surface water from the east side of Ash street flowed through the drain into the low place at the head of the drain on the west side of the street, which overflowed by reason of the insufficiency of the drain, and the water followed its natural trend into the park, carrying upon it mud and filth. This was followed by similar storms on July 2, 6 and 26, with practically the same results, whereby the plaintiff sustained damages.

If this drain across Ash street had not been put in, the water would have run down on the east side of the street, accumulated in the low place at the head of the blind ditch, and backed through the drains into the park. The plaintiff admits, as he must in view of the undisputed evidence, that if the village had not improved its streets and constructed the drains in question, all of the surface water complained of would have flowed upon his park; and that,

if the upper drain across Ash street had not been put in, the surface water would have come upon his park by running down to the low place at the head of the blind ditch, and thence back into the park by reason of the insufficiency of the drains.

It is clear then that the village is not liable for putting in. the upper drain, and thereby carrying the water across the street, because it did not gather the surface water and unnecessarily discharge it in a stream upon the plaintiff's premises where it did not naturally belong. The park was the natural place of deposit of this surface water. In this particular this case is radically different from that of Robbins v. Village of Willmar, 71 Minn. 403, 73 N. W. 1097, relied upon by the plaintiff.

The improvement of the streets and the putting in of these drains by the village was a direct benefit to the plaintiff's premises, as they relieved them in a large part of the surface water naturally flowing upon them; and, if the defendant is liable at all in this case, it must be because it did not do more, and wholly relieve the premises at all times from the burden of surface water naturally resting thereon, by making its drains of sufficient capacity to secure such result. The law imposed no such liability upon the village. Alden v. City of Minneapolis, 24 Minn. 254; Henderson v. City of Minneapolis, 32 Minn. 319, 20 N. W. 322; 2 Dillon, Mun. Corp. § 1051.

The decisions of this court cited and relied on by the plaintiff in support of his claim of liability on the part of the village are not in point, for their facts clearly distinguish them from this case. They are cases where the municipality, by its street improvements, unnecessarily turned surface water upon private premises where it did not naturally belong, or gathered it up by artificial means, and unnecessarily turned it upon such premises, in injurious streams, in greater volume than it would naturally have flowed thereon, or constructed sewers proper for carrying away the sewage of the city, and, by reason of the known inadequate capacity or want of repair of the sewers, the premises were flooded. It is not necessary here to cite and analyze these cases, for they are radically different from the one at bar.

It is the misfortune of the plaintiff in this case that his land is a natural depository for surface water; and, if he wishes to keep the

surface water from coming upon it, his remedy is to fill it. The village was not legally bound to construct its surface drains of adequate capacity to relieve his land of surface water, and, it appearing from the undisputed evidence that by no act or omission of the defendant village was any more surface water, or any greater volume, carried upon his premises than naturally belonged there, it is not liable in this case. St. Paul & D. R. Co. v. City of Duluth, 56 Minn. 494, 58 N. W. 159.

The evidence does not justify the further claim of the plaintiff that the defendant was equitably estopped from asserting the claim that the surface water naturally flowed upon his premises.

Order affirmed.