Decided 29 May, 1899.

## SCHNEIDER *v.* HUTCHINSON.

[57 Pac. 324.]

35   253
43   260

1. OPENING DEFAULT—DISCRETION OF COURT.—The vacation of a default judgment entered on striking a demurrer to the complaint for a technical defect, and permitting defendant to answer, is within the discretion of the court.

2. ADVERSE POSSESSION OF STATE LANDS.—Under Hill's Ann. Laws, §§ 4 and 13, barring action by the state for the recovery of land unless plaintiff or its predecessor was seised or possessed of the premises within ten years before suit brought, the state may be disseised by adverse possession of lands the same as an individual; and hence one who has held adverse possession of state lands for the statutory period acquires a perfect title.

3. EFFECT OF DEED BY SCHOOL BOARD.—The board for the sale of state school lands has no power to deprive one who has acquired title by adverse possession to school lands of his title by granting the lands to others, without notice and an opportunity to be heard.

4. CHARACTER OF CONGRESSIONAL GRANT OF SCHOOL LANDS.—A grant by congress of land to a state "for the use of schools" is an absolute grant, vesting title for a specific purpose, and not a grant as on a condition subsequent.

From Union : ALFRED F. SEARS JR., Judge.

Action by Thomas Schneider against James H. Hutchinson. There was a judgment for defendant, and plaintiff appeals.        AFFIRMED.

For appellant there was a brief over the name of *Woodward & Palmer*, with an oral argument by *Mr. Clinton C. Palmer*.

For respondent there was a brief and an oral argument by *Mr. Thos. H. Crawford*.

MR. JUSTICE BEAN delivered the opinion of the court.

This action was commenced on May 12, 1898, to recover possession of certain land in Union County ; being a part of the grant to the state by the act of congress of February 4, 1859, for the use of schools, and commonly known as "school lands." A demurrer to the complaint having been stricken from the files because of a failure

to comply with some rule of the court in reference to its service, judgment was entered for the plaintiff. But the same day, on a showing satisfactory to the trial court, the judgment was set aside, and the defendant permitted to answer, which he did, denying plaintiff's title, and setting up title in himself by adverse possession. The cause was tried without the intervention of a jury ; and from the findings of fact it appears that in 1874 Minch and Robinson sold and conveyed the property in question to one John Miller, who immediately went into possession, and he and his successors in interest, including the defendant, have been in the continuous, open, exclusive, and adverse possession thereof, ever since, claiming title thereto. On the nineteenth of August, 1897, while the land was so occupied and claimed by the defendant, the Board of Commissioners for the Sale of School Lands sold and conveyed the same to the plaintiff's grantor. Upon these facts the court held that the action was barred by the statute of limitations, and entered judgment accordingly, from which the plaintiff appeals, claiming that the court erred in setting aside defendant's default and permitting him to answer, and in ruling that the statute of limitations ran against the state while it had the title to the land in controversy. But, in our opinion, neither of these positions is sound.

1.   The vacation of the judgment, under the circumstances referred to, was a matter resting within the sound discretion of the trial court, and its decision will not be disturbed on appeal, unless for a manifest abuse, which does not appear in this case.

2.   The law is well settled that the statute of limitations cannot be set up as a bar to any right or claim of the state, without its permission :   1 Wood, Lim. § 52 ; Buswell, Lim. § 98. But our statute (Hill's Ann. Laws) is expressly made applicable to actions for the recovery

of real property, brought in the name of the state, the same as to actions by private parties. Section 4 provides that such actions shall only be commenced within ten years after the cause of action shall have accrued, "and no action shall be maintained for such recovery unless it appear that the plaintiff, his ancestor, predecessor, or grantor was seised or possessed of the premises in question within ten years before the commencement of said action;" and by section 13 it is provided that this limitation "shall apply to actions brought in the name of the state, or any county or other public corporation therein, or for its benefit, in the same manner as to actions by private parties." It would seem that the language of the statute is so plain and unambiguous upon this question as to leave no room for controversy as to its proper interpretation, but counsel for the plaintiff claims that a distinction is made between seisin and possession of real property; and he argues that the state became seised of the school lands by act of congress, and cannot be disseised except by grant, and therefore the statute will not run against the state, although the lands may in fact be in the adverse possession of another. But "seisin," as used in the statute, as well as the common law, signifies possession; and, according to modern authorities, there is no legal difference in the meaning of the two words: 3 Washburn, Real Prop. § 485; Jacob's Law Dict., title "Seisin;" 21 Am. & Eng. Enc. Law, (1 ed.), 1057; *Ford* v. *Garner's Adm'r*, 49 Ala. 601; 5 Cent. Dict. It is true, it is sometimes said that the state, because of its ubiquity, cannot be disseised of its property, and so cannot maintain an action of trespass to try the title to land, or an action of ejectment: 3 Washburn, Real Prop. *525; *Decker* v. *Bryant*, 7 Barb. 189; *State* v. *Arledge*, 1 Bailey, 551. But this is only a reason given by the authorities why the statute of limitations

should not apply to actions brought by a sovereign power, unless expressly provided, and can have no force where the state has voluntarily subjected itself to its provisions. In the latter case the same rule as to ouster and possession will obtain where the state is the paramount owner of the land as that which exists in the case of a private person. In either case the seisin or possession will follow the title, where there is no actual adverse holding; but such a holding for the statutory period will bar an action by the state, the same as an action by a private person: *Green* v. *Irving*, 54 Miss. 450 (28 Am. Rep. 360); *People* v. *Van Rensselaer*, 8 Barb. 201; *People* v. *Clarke*, 10 Barb. 144; *People* v. *Rector, etc. of Trinity Church*, 22 N. Y. 44; *Wyatt* v. *Tisdale*, 97 Ala. 594 (12 South. 233); *Price* v. *Jackson*, 91 N. C. 14; *Nichols* v. *City of Boston*, 98 Mass. 40 (93 Am. Dec. 132); *Attorney-General* v. *Copper Co.*, 152 Mass. 447 (25 N. E. 605).

A distinction is sometimes made, or sought to be made, in this regard, between actions brought by the state in its sovereign and in its proprietary capacity, and the authorities show much diversity in the decisions and reasoning upon this subject. But this distinction is generally suggested in the discussion of the question as to when and in what cases, if any, the statute of limitations will apply to actions brought by the state, when it is not expressly made applicable to such actions by its terms; and as said by Mr. Chief Justice GILFILLAN in *City of St. Paul* v. *Chicago, M. & St. Paul Ry. Co.*, 45 Minn. 396 (48 N. W. 20): "The usefulness of the cases and text-books cited as guides has been mainly done away with by the statutes. The general statute of limitations seems, and was undoubtedly intended, to include every case of an action brought by a private person. Section 13 provides: 'The limitations prescribed in this chapter for the commencement of actions shall apply to the same

actions when brought in the name of the state, or in the name of any officer, or otherwise, for the benefit of the state, in the same manner as to actions brought by citizens.'   *   *   *   There is no distinction suggested in either of these statutes between actions brought as 'sovereign,' or in a governmental capacity, and those brought as 'proprietary,' or such as a private person might bring for the same or a similar purpose.   To hold that it was the intention to make or preserve such a distinction, so as to exclude from the operation of the statutes any actions, in whatever capacity the right involved may be claimed, would be applying a strict rule of construction, contrary to the rule that statutes of limitations, being statutes of repose, are to be liberally construed, so as to effectuate the intention of the legislature.''   The decision from which this quotation is taken was made under a statute on all fours with ours, and is therefore very much in point in the present discussion.   It was an action brought to recover possession of certain land in the City of Saint Paul, which it was alleged was a public levee, and a defense of the statute of limitations prevailed.   See, also, the following decisions made under a similar statute :   *Abernathy* v. *Dennis*, 49 Mo. 468 ;   *School Directors* v. *Georges*, 50 Mo. 194 ;   *Burch* v. *Winston*, 57 Mo. 62.   No distinction is to be found in the decisions, under statutes providing that actions by the state shall be barred within a specified period, between actions brought in its sovereign and those brought in its proprietary capacity, but all alike are held to be within the terms of the statute.   There is a line of authorities, however, which hold that such statutes have no application to actions concerning property held by the state for public purposes without power of alienation :   *Hoadley* v. *City of San Francisco*, 50 Cal. 265 ;   *People* v. *Pope*, 53 Cal. 437 ;

*Board of Education* v. *Martin*, 92 Cal. 209 (28 Pac. 799). But these authorities, if sound, can have no application to the question in hand, because the Board of Commissioners for the Sale of School and University Lands not only has the power and authority to alienate and dispose of school lands, but it is expressly made its duty to do so : Hill's Ann. Laws, §§ 3598, 3602.

3.   It is also claimed that the deed from the state to the plaintiff's grantor is a final and conclusive adjudication in his favor, and against the defendant and his predecessors in interest, in reference to their claim of adverse possession ; but we know of no law giving to the action of the Board of School Land Commissioners, in issuing and delivering to a purchaser a deed to school lands, the effect to deprive a third party of his rights, without notice, and without an opportunity to be heard. If, as we have seen, the statute of limitations runs against the state, one who has held adverse possession of state lands for the statutory period has a perfect and complete title thereto (*Parker* v. *Metzger*, 12 Or. 407, 7 Pac. 518), which cannot be taken away from him, and vested in another, by any action of the school board.

4.   Again, it is contended that the land in question was granted to the state by the general government for the use of schools as upon a condition subsequent, and that upon its application to other purposes the United States has the right to re-enter and take possession, and against this right the statute of limitations does not run, and therefore no person can acquire title to such lands by adverse possession prior to its alienation by the state. The vice of this position lies in the fact that the grant to the state is not upon a condition subsequent, but it is an absolute grant, vesting the title in the state for a special purpose. The language of the act of congress is that such land "shall be granted to the state for the use of

schools," and the United States has no right to re-enter for any reason whatever. It follows that the judgment of the court below must be affirmed, and it is so ordered.

AFFIRMED.

Decided 17 July, 1899.