244 P.2d 134

**MARTINEZ et al. v. COOK et al.**

**No. 5469.**

Supreme Court of New Mexico.

April 2, 1952.

Rehearing Denied May 28, 1952.

Harry L. Bigbee, Donnan Stephenson, Santa Fe, for appellants.

Gilbert, White & Gilbert, Santa Fe, for W. P. Cook and Espanola Mercantile Co.

McGHEE, Justice.

This is an action by property owners in the Town of Espanola for damages to buildings and personal property caused by flood waters resulting from a heavy rain being retained on their lots because of the filling in of a claimed natural drainway, the closing of a cut in an abandoned railroad embankment and the stopping up of a culvert across Onate Street which separated the area in which the defendants had their properties and the lands of the individual defendants.

Plaintiffs (appellants here) appeal from an order of the district court dismissing their complaint for failure to state a claim upon which relief could be granted. The individual defendants (appellees here) have filed briefs and orally argued the case, but we have no appearance for the municipality.

The plaintiffs' second amended complaint alleged, in substance, the following: Plaintiffs own dwelling houses and business establishments in the Town of Espanola in an area bounded on the east by Onate Street, on the south by the City Limits, on the north by a street running from Onate Street to the Espanola High School and on the west by a large ditch. The area is so situated and contoured that prior to the acts complained of water drained from a northwesterly direction across the area through a depression or swale in the southeast portion thereof and thence through a culvert under Onate Street. After passing through the culvert, the water entered a natural watercourse or arroyo having clearly defined bed, banks and channel and flowed from that point in the natural watercourse or arroyo across a low or depressed area through the lands of defendant Cook or Espanola Mercantile Co., thence through a cut or trestle in a railroad embankment and finally into the Rio Grande. More than 21 years prior to the filing of this action a railroad company (predecessor in title of individual defendants) constructed the embankment referred to, which ran generally parallel to Onate Street east of the area owned by plaintiffs. The railroad company left a cut or drainageway through the embankment so the flow of water in the watercourse or arroyo was not obstructed. During the spring of 1950 defendants filled in with dirt the low or depressed area between the culvert under Onate Street and the cut through the railroad embankment, thereby obstructing the normal passage of the waters to the river.

The complaint then states: (1) The lands of defendant Cook or Espanola Mercantile Co. were subservient to the dominant estate of plaintiffs, the former being required to allow free drainage of waters from the lands of plaintiffs in the natural watercourse or arroyo, (2) the plaintiffs or their predecessors in title had made continuous, uninterrupted, adverse and exclusive use of the described drainage route for more than 21 years and had acquired a prescriptive right thereto, and (3) the natural watercourse or arroyo was of a permanent character and had drained the area for many years and in reliance thereon, and relying on the defendants not wrongfully obstructing or preventing the flowage of waters in said natural watercourse or arroyo, the plaintiffs, with full knowledge of defendants, proceeded to expend large sums of money in the improvement of their lands, erecting dwelling houses and business structures thereon, and that defendants

were estopped to prevent or obstruct the free flowage of waters in the natural watercourse or arroyo.

Lastly it was alleged the defendants negligently or willfully obstructed and dammed up the drainage route in disregard of the rights of plaintiffs and the area owned by the various plaintiffs was flooded after a rain, occasioning severe damage to plaintiffs' properties.

A second count of the complaint is substantially similar to the first count above outlined, except it is predicated upon allegations of drainage through an artificial watercourse or ditch rather than a natural watercourse or arroyo. However, in addition to the alternative statement and claim as to the artificial watercourse or ditch, the second count alleges the defendant Town of Espanola was negligent in filling in the drainage route in that it failed to provide adequate or sufficient means for drainage of normal waters from the area. It further states the defendant Town of Espanola was negligent in that the acts complained of were done pursuant to a plan for the drainage of the area which was palpably insufficient and inadequate and the plan was adopted and put into effect without aid or advice of skilled advisors.

The divergent views of the parties appearing here as to the right of drainage of flood waters are aptly illustrated by the opening statements in their briefs:

The plaintiffs say:

" * * * Under no known theory of law may a lower proprietor dam up a natural watercourse, cast waters back upon upper proprietors to their damage, and still escape with impunity. It is uniformly and universally held that such an act gives rise to an action for damages.

"As previously pointed out, it was specifically alleged in the First Count that the waters from the area where the Appellants owned their buildings and conducted their businesses flowed from the area in a natural watercourse. Appellant can discover no authority contrary to the universal rule to the effect that he who obstructs a natural watercourse must respond in damages to those injured by his acts. It is stated in 56 Am.Jur. 'Waters,' Section 12, page 501, that: 'It may here be stated generally that one who, either without authority or in the negligent exercise of a legal right, interferes with the flow of a natural watercourse is responsible for any damage proximately resulting therefrom to other persons.' "

The defendants, Cook and Espanola Mercantile Company, answer by saying the trial court did not err as claimed, stating:

"By the second amended complaint appellants claim certain rights in and to an alleged natural water course situate upon the land of appellees Cook and Espanola Mercantile Co: namely, to have surface waters on appellants' lands, which do not border

348

the lands of these appellees, drain into an alleged natural water course through an artificial drainageway across intermediate land. To support appellants' complaint they cite 56 Am.Jur. to the effect that a riparian proprietor has the right to have the water of a stream flow to and from his land in its natural state and the lower riparian proprietor cannot obstruct the water and cause it to back upon and injure the proprietors above.

"No fact is alleged in the complaint to bring the appellants within this rule of law. 'Subject to certain exceptions hereinafter noted riparian rights subsist only for riparian proprietors, and those who do not own or control riparian land cannot claim them.'" 56 Am.Jur. Waters § 283, p. 735.

"The amended complaint states that appellants' land is bordered on the East by Onate Street through which the surface water flowed and thence onto the lands of these particular appellees and into a natural or artificial water course thereon. 'While there is some authority to the contrary the majority of courts have followed the rule that land which is separated from water by a highway or street the fee of which is in the public is not riparian land.'" 56 Am. Jur. Waters § 280, p. 733.

■ The rule contended for by the defendants applies, we believe, to the ordinary riparian rights to take water from the stream for domestic or agricultural purposes, or to operate mills, where such rights obtain. It cannot be the law in this region of mountains, hills, arroyos and heavy flash floods that because a narrow strip of land, a road or a street separates an upper and lower owner of a natural drainage way or watercourse the lower owner may with impunity build dams and back up the water on the lands of the upper owner. Many of our roads follow the course of arroyos and often cross them many times, usually on bridges or culverts. With the county or state owning the right of way and the lands of an upper owner being thus separated from the arroyo, enormous damage could be caused the lands of noncontiguous owners at the whim or caprice of the lower owner should he decide to dam the arroyo, all without right of action by the injured party if the defendants be right in their position as stated above.

We believe this controversy first requires a determination of the true rule in New Mexico with regard to surface waters and what constitutes a watercourse.

■ It is agreed by all parties that so long as such waters are in a diffused state and have not reached a natural drainage way or watercourse, an upper landowner may not by artificial means collect and throw them on his lower neighbor in a manner in which they would not flow except for such action.

The first reported case arising in New Mexico on surface waters is Walker v.

New Mexico & S. P. R. Co., 7 N.M. 282, 34 P. 43, Id., 165 U.S. 593, 17 S.Ct. 421, 41 L.Ed. 837. Unfortunately, the case in our territorial court was decided on the constitutionality of a practice statute instead of upon its merits. The Supreme Court of the United States did consider the case on its merits, but felt as we had adopted the common law as the rule of practice and decision (Ch. 2, Sec. 2, Laws, 1876) as construed in Browning v. Browning's Estate, 3 N.M. (Gild.) 659, 9 P. 677, that in the absence of a statute on surface waters it should apply the common law which, it erroneously stated, was the "common enemy" doctrine. It there held a railroad company which had by its roadbed blocked channels leading from mountain arroyos was not liable for flooding upper lands with waters which would, except for the failure of the railroad company to provide a passageway for the water through the roadbed, have flowed off through channels on such lands and into the Rio Grande.

In Vol. 3, Farnham on Waters and Water Rights, Sec. 889b, p. 2590, practically a page is devoted to the Walker case and the author shows, without question, the court was misled as to the common law on surface waters and adopted a false doctrine. The closing sentence of the section is: "And, since the United States Supreme Court purports to rest its decision upon the fact that it was bound to follow the common law because it had been adopted by statute in the territory from which the case came, the conclusion seems inevitable that the case was wrongly decided, and that the decision should have been the other way."

Since the opinion in Browning v. Browning's Estate, supra, was handed down, we have limited the operation of the common law and refused to follow it where its rules were not deemed suitable to our conditions. State v. Armijo, 18 N.M. 646, 140 P. 1123; Blake v. Hoover Motor Co., 28 N.M. 371, 212 P. 738; Ickes v. Brimhall, 42 N.M. 412, 79 P.2d 942. Particularly, we have never followed it in connection with our waters, but, on the contrary, have followed the Mexican or civil law, and what is called the Colorado doctrine of prior appropriation and beneficial use. Trambley v. Luterman, 6 N.M. 15, 27 P. 312; Snow v. Abalos, 18 N.M. 681, 140 P. 1044; State ex rel. State Game Commission v. Red River Valley Co., 51 N.M. 207, 182 P.2d 421. We even refused to follow the common law on waters in underground basins having defined boundaries. State ex rel. Bliss v. Dority, 55 N.M. 12, 225 P.2d 1007, appeal dismissed, 341 U.S. 924, 71 S.Ct. 798, 95 L.Ed. 1356.

New Mexico is a state with an enormous number of arroyos which serve the purpose of drainage ways during the rainy seasons but are dry at other times. The rule in eastern states that to constitute a watercourse water must be carried in the

channel throughout the entire year or a majority of the time is not suited to our conditions. Likewise, the holding in the Walker case that because a deep arroyo terminated in the flat country although the water thereafter traveled to a river through defined channels, that dams may be thrown across such channels and the water cast back on higher lands is ill suited to conditions in this state and the case will not longer be followed. While not repudiated in Jaquez Ditch Co. v. Garcia, 17 N.M. 160, 124 P. 891, 893, it was adroitly distinguished, and one who had blocked an arroyo thereby causing water to wash out a ditch was held to be a wrongdoer. The trial court had found the arroyo in question was not a permanent or natural stream or watercourse in which water ran during the entire year, being a dry arroyo carrying only such waters as might be designated surface or flood waters, and dismissed the case. After citing with apparent approval many cases which hold the flow of water in a defined channel need not be continuous in order to constitute it a watercourse, the court said the only case which seemed to be in conflict with the cited cases was the Walker case which it distinguished because there the water left the arroyo some four miles from the flooded lands. Near the close of the opinion we stated: "We think the court below erred in holding that such a stream or arroyo was not a permanent or natural water course because water did not run in it during the entire year, and because at times it carried flood or surface waters."

In this regard, see Soules v. Northern P. R. Co., 34 N.D. 7, 157 N.W. 823, L.R.A. 1917A, 501. In that case the proof showed a natural drain or ditch received the surface water of a drainage area of some 168 acres, was several feet in depth, had a well defined channel, and, although it had grass growing at the sides, had a space at the bottom worn away by the water to a breadth of three or four feet and that it served to convey the waters of the area into a river or stream, justifying the jury in finding that such drain or ditch was a natural drainway or drainage channel—and this, although there was no evidence that water ran therein all of the time, but merely that the drain or ditch served to convey melting snows and surface water.

It was further held in the Soules case that it was the duty of a lower land owner who builds a structure across a natural drainage way to provide for the natural passage through such obstruction of all of the water which may be reasonably anticipated to drain therein and that this was a continuing duty.

The L.R.A. report carries a list of the large number of cases cited in the briefs of the parties and the opinion contains an able and exhaustive discussion of the law of flood waters and watercourses, clearly

showing the rule generally followed in the eastern states that to comprise a watercourse water must be carried in the channel all or a greater part of the year is not reasonable in the arid or semi-arid states which have arroyos or ditches which carry a considerable volume of water at times but are dry for most of the year. One interested in the law of watercourses and flood waters in the western states will, in our opinion, find the case interesting and profitable reading. It has our approval on the questions just discussed and we will follow its holding on this subject.

It will be noticed the plaintiffs place a natural swale or depression on their property into which water drained naturally; they then show Onate Street adjoining their property and say it had a culvert under it through which the waters from the depression drained and, as they left the culvert, went into a natural watercourse on the lands of the individual defendants. and thence through the cut in the railroad embankment and into the Rio Grande. They fail, however, to allege the waters ever flowed in a natural watercourse across the street to the watercourse above mentioned and that the culvert is a substitute for such natural watercourse.

But, say the plaintiffs, we had a prescriptive right to flow waters through the culvert and thence through the private lands of the individual defendants.

It is the general rule, supported by the great weight of authority, that the rights of the public in a street or alley cannot be divested by adverse possession of another for the statutory period unless the public use has been abandoned, nor can one obtain a prescriptive right in a public street. Vol. 11 McQuillin, Municipal Corporations, § 30.179; 19 C.J., Easements, § 29, p. 878; Anno., 28 C.J.S., Easements, § 59; Schneider v. Hutchinson, 35 Or. 253, 57 P. 324, 76 Am.St.Rep. 474, 479, p. 492 et seq. We feel the public welfare requires us to follow the general rule as above announced.

But, even if we be mistaken in this regard, the pleadings of the plaintiffs are not sufficient to establish such right, even against a motion to dismiss. The use pleaded is alleged to have been continuous, uninterrupted, adverse and exclusive, while the use necessary to acquire such right must have been "open, uninterrupted, peaceable, notorious, adverse, under a claim of right, and continue for a period of ten years with the knowledge or imputed knowledge of the owner." Hester v. Sawyers, 41 N.M. 497, 71 P.2d 646, 651, 112 A.L.R. 536. See also 2 C.J.S., Adverse Possession, § 210, p. 811. Although we have held in pleading adverse possession all of the necessary elements must be pleaded, it might be that under our new rules the pleading would have been sufficient had it only claimed a prescriptive right, but, having pleaded some of the necessary elements, plaintiffs will be

held to those specifically stated. Oliver v. Enriquez, 17 N.M. 206, 124 P. 798; Herington v. Herrera, 44 N.M. 374, 102 P.2d 896. The plea as made was insufficient to show a prescriptive right.

The plaintiffs next say as the waters had drained through the culvert and drainage way for more than 21 years they relied on such drains being kept open, and, with the knowledge of the defendants, made large expenditures of money in erecting their buildings, stocking their stores, etc., and that the defendants were estopped to fill in such drains. The necessary elements of estoppel have been stated by this court in Chambers v. Bessent, 17 N.M. 487, 134 P. 237, 239, quoting from Pomeroy's Equitable Jurisprudence, § 805, as follows: " 'There must be conduct—acts, language or silence —amounting to a representation or concealment of material facts. These must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him. The truth concerning these facts must be unknown to either party claiming the benefit of the estoppel at the time when such conduct was done and at the time when it was acted upon by him. The conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and proper that it will be acted upon. The conduct

must be relied upon by the other party, and, thus relying, he must be led to act upon it. He must in fact act upon it in such a manner as to change his position for the worse; in other words, he must so act that he would suffer a loss if he were compelled to surrender or forego or alter what he has done by reason of the first party being permitted to repudiate his conduct and to assert rights inconsistent with it.' "

The allegation is the improvements were made with the knowledge of the defendants, but it is not stated the defendants knew or should have known they were made in reliance on the defendants not stopping the drainage way. The plea of estoppel must also be held insufficient.

We will next consider the claim the town is liable for stopping the flow of water through the culvert and failing to provide adequate substitute drainage.

Such action can only be viewed as an abandonment of the drainage way by the town. It seems to be a settled principle of law that the establishment of a drain by a municipal corporation is the exercise of a legislative or quasi-judicial power, and the legislative body of the municipality is the sole judge of the necessity therefor. 18 McQuillin, Municipal Corporations (3rd Ed.) § 53.119.

It seems to be equally well settled that the abandonment or discontinuance of

a drain constructed by a municipal corporation will not render the municipality liable for injuries to property resulting from the abandonment if the property was not left in any worse condition than it was before the sewer or drain was constructed. 18 McQuillin, Municipal Corporations, (3rd Ed.) § 53.120. See also Finley v. City of Kendallville, 45 Ind.App. 430, 90 N.E. 1036; Henderson v. City of Minneapolis, 32 Minn. 319, 20 N.W. 322; Atchison v. Challiss, 9 Kan. 603. There is no claim the plaintiffs had any more water cast upon them than they would have had if the culvert had never been installed, so they are in no worse condition, so far as water is concerned, than they were before the installation of the drain across the street. The city is not liable to the plaintiffs for its act in closing the passageway through the culvert. The town could not, of course, close a natural drainage way or watercourse without furnishing substitute drainage, but this is not the case here.

With the abandonment of the drainage way by the municipality and its stoppage of the flow of water through the culvert, there was no further use for a drainage way through the lands of the individual defendants; hence they no longer owed the plaintiffs the duty of leaving the drainway open, if they ever owed them such duty, and they are not liable to the plaintiffs for the damage caused by the water.

The plaintiffs seek to hold the town liable in their second cause of action for its claimed negligence in failing to provide adequate drainage of normal waters from the areas where they owned land or conducted businesses, alleging that drainage provided for such purpose was inadequate, although done in pursuance of a plan for the drainage of such area, which plan was palpably insufficient and inadequate to carry off normal waters from the area, and that the plan was adopted and put into effect without the aid or advice of skilled advisers.

In 173 A.L.R. 1031, there appears an exhaustive annotation on the liability of municipal corporations for damage to property resulting from inadequacy of drains and sewers due to defects in plans. Beginning at p. 1038 the annotator states: "Although not liable for damage resulting from the inadequacy of sewers or drains resulting from a mere error of judgment in adopting a plan, according to the weight of authority, municipalities are liable where the adoption of inadequate plans results from negligence in adopting a palpably insufficient plan, or in adopting a plan without the aid of skilled persons, or in failing to change a plan after its inadequacy has been demonstrated after it has been put into operation."

It is further stated by the annotator at p. 1041: "Negligence on the part of a municipality may also be predicated upon

proceeding with the adoption of a sewerage or drainage plan without the aid of skilled advisers, and where such negligence results in the adoption of a plan for inadequate sewers and drains followed by injury to private property from overflows due to such inadequacy, the municipality is liable."

An examination of the cases in support of these statements discloses that where the municipality has been held liable for the reasons above set out, additional waters were cast upon the lands of the complaining party, and not, as here, where the municipality failed to provide drainage for waters falling upon the lands of the plaintiffs and caught in the natural basin on their property before it left the street. As we view the complaint in light of the briefs, aided by the oral argument, the complaint of the plaintiffs in this regard is grounded on the fact the town failed to provide them with a drainage system into which they could drain the waters which fell upon their lands and were trapped in the depression or swale described in their complaint, and not that waters were cast upon their lands from the streets or other properties.

In Dudley v. Village of Buffalo, 73 Minn. 347, 76 N.W. 44, recovery was denied a plaintiff who had improved a tract of land for park purposes in a basin which was the natural depository of all waters discharged thereon. The village had provided an inadequate drainage system for the purpose of carrying off the surface water from the streets, which, before the installation of the system, drained into the park. Because of the inadequacy of the drains the park was flooded, but as the village had not gathered water which would but for its acts not have gone on plaintiff's property, recovery was denied.

Recovery for damages caused by the flooding of lands was upheld in Bush v. City of Rochester, 191 Minn. 591, 255 N.W. 256, where the city graded a street adjoining the plaintiff's property and closed a natural drainway without providing drainway for the waters theretofore flowing in such natural drainway following heavy rains.

The same court, however, denied recovery in the later case of Roche v. City of Minneapolis, 223 Minn. 359, 27 N.W.2d 295, where the plaintiff had built a house in an old bog which had been drained by the city, but where, it was claimed, the drainage was inadequate and the city had negligently allowed a sand bar to build up and remain at the mouth of the drain, thus greatly retarding the flow of water therefrom. The area where the plaintiff had built his house was the natural depository for the waters of the surrounding area and, as the city had not collected and turned waters on the lands of the plaintiffs which would not naturally go there, it was not liable in damages for the inadequacy of its drains or their diminution in carrying capacity because of the sand bar.

Under the facts before us we feel compelled to hold the town is not liable for its failure to provide the plaintiffs with an adequate drainage system so they might drain the waters from their properties.

What has been said adequately disposes of all questions raised in the case.

The judgment will be affirmed.
It is so ordered.

LUJAN, C. J., and COMPTON and COORS, JJ., concur.

SADLER, J., not participating.